IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**GAINESVILLE RESIDENTS UNITED,
INC., et al.,**

      **Plaintiffs,**

**v.**                                                          **Case No. 1:23-cv-176-AW-HTC**

**RON DESANTIS, in his official capacity
as Governor of the State of Florida, and
CITY OF GAINESVILLE,**

      **Defendants.**

_____/

## <u>ORDER OF DISMISSAL</u>

Plaintiffs sued several state officials and the City of Gainesville to challenge H.B. 1645 (or the "Act") under state and federal law. ECF No. 1 (Cmpl.). The Act created the Gainesville Regional Utility Authority (the "Authority") and gave it control of Gainesville Regional Utilities ("GRU"). Before the Act, the Gainesville City Commission controlled GRU—an arrangement Plaintiffs strongly preferred.

Plaintiffs voluntarily dismissed their claims against some Defendants, *see* ECF No. 36, and I dismissed the claims against the Governor based on Article III standing and the Eleventh Amendment, ECF No. 37. That left just the City of Gainesville.

As I noted in an earlier order, Plaintiffs' own filings raised questions of Article III standing as to the City. ECF No. 38 (citing, *e.g.*, ECF No. 35 at 12 ("[T]here are

1

no levers of power the City could exercise over the Authority to give meaning to an injunction.")). And because this court has an independent duty to consider its jurisdiction, *Fla. Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)), I directed Plaintiffs to show why the court should not dismiss their claims against the City for lack of standing, ECF No. 38. Having reviewed Plaintiffs' response, ECF No. 40, I conclude I must dismiss the federal claims. And to the extent the court has discretion to keep the state-law claims, I conclude I should not do so.

Plaintiffs argue that because the Authority is a "unit" of the City, any injunction against the City would bind the Authority as well. But even if this is so, that would not establish standing to sue. Standing requires "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). And Plaintiffs have not shown these elements as to their federal claims against the City. At the least, they have not alleged facts showing an actual or imminent injury in fact.

Plaintiffs' three federal claims are all First Amendment claims. Plaintiffs allege the Act violates their right to petition (Count I) and their right to free speech (Counts II-III). In the order dismissing claims against the Governor, I concluded

Plaintiffs had not plausibly alleged injury for their free speech claims because they had not shown that the Act chills protected expression. *See* ECF No. 37 at 3-4 ("There is nothing in the Act's language prohibiting Gainesville Residents United, its members, or anyone else from speaking about 'social, political, or ideological interests' . . . ."). Thus, Plaintiffs lacked an actual or imminent free-speech injury. Plaintiffs seem to accept that conclusion. ECF No. 40 at 19 n.12 ("The Court's observations concerning Plaintiffs' First Amendment Free Speech claims are well taken. It is true that, under the HB 1645, Plaintiffs remain free to say anything they want on any topic." (citation omitted)). Plaintiffs contend, however, that the court erred in concluding they lacked standing for their petition claim.

Plaintiffs first argue that I misunderstood their petition claim, which they say is based on their inability to "petition for relief as to a particular set of grievances . . . from anyone under any circumstances." *Id.* at 18. But Plaintiffs' complaint frames the petition claim in terms of an inability to have someone *act* on their petitions. *See, e.g.*, Cmpl. ¶ 75 (describing how the Act infringes upon Plaintiffs' ability to petition by removing the City's "ability to *respond* to Plaintiffs' grievances," by cutting off Plaintiff's ability to remove "*unresponsive* representatives," and by preventing the Authority from "considering *or taking actions* concerning Plaintiffs' grievances" (emphasis added)); *id.* ¶ 76 ("Even if the Authority allowed Plaintiffs or others to address them with respect to 'social, political, or ideological interests', the *Authority*

*is legally prohibited from taking any action in response*." (emphasis added)); *see also* ECF No. 40 at 20 (noting how the Act "only prohibits Authority *action* with respect to certain grievances," leaving others with different grievances to "*obtain full redress*" (emphasis added)). However one describes the claim, the underlying standing analysis remains the same: Plaintiffs must allege an injury that is actual or imminent, concrete, and particularized.

Plaintiffs also argue that the court erred in finding that their Petition Clause injury was not particularized. I disagree, but even if true, Plaintiffs have still not plausibly alleged an injury sufficient for standing. If the crux of the petition claim is that Plaintiffs cannot "petition for relief as to a particular set of grievances" from anyone, then the claim fails on standing for the same reason as the free speech claims. The right to speak and the right to petition are "cognate rights." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011) (quoting *Thomas v. Collins*, 323 U.S. 516, 530 (1945)); *see also id.* at 390 (referring to a petition as a form of speech). "The right to petition allows citizens to *express* their ideas, hopes, and concerns *to* their government and their elected representatives . . . . [B]oth speech and petition advance personal *expression*, although the right to petition is generally concerned with expression directed *to* the government seeking redress of a grievance." *Id.* (emphasis added). Plaintiffs have not plausibly alleged that the Act prohibits them

from expressing their personal grievances to the government or anyone else, so they have not plausibly alleged an actual or impending injury under the Petition Clause.

And if there is more to Plaintiffs' claim than the ability to petition for relief on specific grievances (i.e., that Plaintiffs cannot obtain redress of those grievances from anyone), they still have not alleged that their intent to petition the Authority (or anyone else) is "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). The fact that Plaintiffs have previously petitioned politically responsive officials on matters of social, political, or ideological interest and expressed the intent to do so again is not enough to establish that their inability to do so in the future is "actual or imminent." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) ("Profession of an intent . . . is simply not enough. Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." (cleaned up)).

Finally, Plaintiffs argue that if this court finds they lack standing to challenge the Act, "no one has standing to do so." ECF No. 40 at 16. But this argument does not help for two reasons. First, "the assumption that if [the present parties] have no standing to sue, no one would have standing, is not a reason to find standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013) (cleaned up) (quoting

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, *Inc.*, 454 U.S. 464, 489 (1982)). Second, finding Plaintiffs lack standing for the specific federal claims they alleged does not mean no one has standing. *See Valley Forge Christian Coll.*, 454 U.S. at 489 ("[The Court is] unwilling to assume that injured parties are nonexistent simply because they have not joined respondents in their suit. The law of averages is not a substitute for standing."). The issue is not whether some other plaintiff might succeed in some other context. The question is whether these Plaintiffs have alleged injury, traceability, and redressability in this case. They have not.

Since Plaintiffs have not plausibly alleged injury, they have not alleged enough to show standing for their federal claims. Thus, the court lacks jurisdiction and must dismiss those claims. And without any remaining federal-law claims, the court determines it is appropriate to dismiss the state claims too. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see also Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863 (11th Cir. 2022) (citing *Carnegie*).

The clerk will enter judgment that says, "Plaintiffs' federal claims against the City of Gainesville and against the Florida Governor are dismissed without prejudice for lack of standing. Plaintiffs' state-law claims against the Florida Governor are dismissed without prejudice based on Eleventh Amendment immunity. Plaintiff's state-law claims against the City of Gainesville are dismissed without prejudice in the court's discretion based on 28 U.S.C. § 1367(c)(3)."

The motion to intervene (ECF No. 41) is DENIED as moot.

The clerk will close the file.

SO ORDERED on February 21, 2024.

s/ *Allen Winsor*
United States District Judge